IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.)
LATASHIA PORTER,                  )
                                  )
            Petitioner,           )
                                  )
     v.                           )      No.  09 C 5921
                                  )
CAROLYN TRANCOSO, Warden,         )
                                  )
            Respondent.           )

MEMORANDUM OPINION AND ORDER

Latashia Porter ("Porter") has filed a 28 U.S.C. §2254[1]

Petition for Writ of Habeas Corpus ("Petition"), to which

respondent Warden Carolyn Trancoso of Dwight Correctional Center

(where Porter is currently incarcerated) has filed an Answer,

followed by Porter's filing of a Response.  For the reasons

explained in this opinion, this Court denies the Petition and

dismisses this action.

Applicable Standards

Where as here the claimed constitutional infirmity that

assertedly invalidates a criminal conviction is predicated on the

concept of constitutionally ineffective representation of a

defendant-now-petitioner by her trial counsel, the seminal

pronouncement in Strickland v. Washington, 466 U.S. 668 (1984)

provides the definitive rule of decision.  Strickland, id. at

687, followed in countless cases during the ensuing quarter

_____

        [1]   All further references to Title 28's provisions will
simply take the form "Section--."

century, requires a dual showing by such a habeas petitioner:

> A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> or death sentence has two components. First, the
> defendant must show that counsel's performance was
> deficient. This requires showing that counsel made
> errors so serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious
> as to deprive the defendant of a fair trial, a trial
> whose result is reliable. Unless a defendant makes
> both showings, it cannot be said that the conviction or
> death sentence resulted from a breakdown in the
> adversary process that renders the result unreliable.

More recently <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411 (2009)

coupled the application of those <u>Strickland</u> requirements with the

narrowed prescription established by Section 2254(d)(1) for the

review of constitutional challenges by a prisoner serving a state

sentence (<u>id</u>. at 1418):

> Under the Antiterrorism and Effective Death Penalty Act
> of 1996 (AEDPA), 28 U.S.C. §2254(d)(1), a federal court
> may not grant a state prisoner's habeas application
> unless the relevant state-court decision "was contrary
> to, or involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States."

Little wonder, then, that <u>Knowles</u>, <u>id</u>. at 1420 described as

"doubly deferential" the level of judicial review called for in a

case such as this one. And Section 2254(d)(2)'s alternative

potential predicate for rejecting a state court adjudication on

the merits requires that the adjudication has "resulted in a

decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State Court proceeding."

Application of the Standards

It is against that background that this Court must test the decision by the Illinois Appellate Court (the last state court to address the merits of the case) in its April 25, 2008 order ("Order") in Case No. 1-05-3812. To eliminate any potential question or possible ambiguity as to the baseline for this Court's rulings, a copy of that comprehensive Order is attached.

Because of Strickland's requirement of a dual showing by a habeas petitioner, a federal court can begin with either of those elements. In this instance the Illinois Appellate Court confirmed that Porter's trial counsel Anthony Schumann ("Schumann") did fall short of the constitutional standard in one respect, and so this opinion will turn to that subject first.

On that score Porter has challenged Schumann's failure (1) to follow up possible exculpatory leads with three witnesses (brothers Vernon and Marquis Ward and Ophiel Watkins) and (2) to cross-examine Shanna Jackson ("Jackson") by bringing out the contents of a statement that she had given to police officer F. Jordan that was at odds with her testimony at trial (or perhaps to seek the admissibility of that statement as substantive

evidence [see 725 ILCS 115-10.1[2]]).  In those respects the trial
court and Appellate Court reached differing conclusions.  This
opinion will focus on the views of the Appellate Court, which had
no stake in defending its own conclusions (as the trial court did
on a post-conviction petition affecting its bench trial
decision).

As to the three nonwitnesses, the Appellate Court reviewed
the circumstances carefully and found that Schumann's
representation in that regard met the objective standard of
reasonableness (Order at 12-13).  That determination cannot be
said to have violated either branch of Section 2254(d).[3]

As for Schumann's claimed mishandling as to witness Jackson,
however, the Appellate Court agreed "that trial counsel was

_____

[2] Porter's counsel mistakenly cited that statutory section
as "115-101" rather than "115-10.1."

[3] Moreover, the Appellate Court went on to find in Order at
14 that the second branch of the Strickland requirements would
not have been met even if Schumann's conduct vis-a-vis the three
nonwitnesses had been held to constitute constitutionally
ineffective representation.  On that score, the fact that the
state trial court had so found would not of course have been
controlling (see Raygoza v. Hulick, 474 F.3d 958, 964 (7th Cir.
2007)), but in this instance the Illinois Appellate Court made
its own finding to the identical effect (id.):

    Nevertheless, even if defense counsel was ineffective in all
    instances defendant contends, we do not find a reasonable
    probability that, but for those purported errors, the result
    of trial would have been different.

And this Court finds that determination to be objectively
reasonable.

4

unreasonable in failing to impeach Shanna Jackson with her prior inconsistent statement to police."[4]  Here too this Court cannot find <u>that</u> determination was unreasonable, so it is necessary to go on to <u>Strickland</u>'s second branch--just as the Appellate Court did in its Order at 13:

> To establish prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.

In analyzing the effect--or, more accurately, the lack of effect--of Schumann's error, the Appellate Court pointed to the "unwavering testimony" of two eyewitnesses and the consistent testimony of four other witnesses--all of which were totally at odds with the statement that Jackson had given to the police officer--as leading the Appellate Court to conclude that there was "no reasonable probability that but for the purported errors by defense counsel, the result of the proceeding would have been different" (Order at 16).  And the Appellate Court reached the same conclusion if the nonwitnesses were added to the mix.  This Court cannot find those determinations to be objectively unreasonable under the statutory standards it must apply.

In sum, this Court has reviewed the parties' respective

---

[4]  In that regard the possible introduction of the statement as a substantive matter under 725 ILCS 115-10.1 would stand on the same footing.

positions through the lens prescribed by Section 2254(d)(1) and (2), and it holds that the adjudication of Porter's claim in the state court proceedings did not run afoul of either of those standards. As stated at the outset, Porter's Petition is denied and this action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 31, 2010

NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

FIFTH DIVISION
April 25, 2008

No. 1-05-3812

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 17836 |
| | ) | |
| LaTASHIA PORTER, | ) | Honorable |
| | ) | Lawrence P. Fox, |
| Defendant-Appellant. | ) | Judge Presiding. |

### O R D E R

Following a bench trial, defendant Latashia Porter was found guilty of first degree murder, two counts of aggravated battery, and failure to report an accident involving death or personal injuries. She was sentenced to 35 years' imprisonment. Defendant appeals the denial of her motion for new trial, asserting that the court erred in rejecting her claim of ineffective assistance of trial counsel due to her attorney's failure to interview three witnesses whose testimony would have established her innocence and failure to seek the admission into evidence of a prior inconsistent statement given to police by a key prosecution witness, Shanna Jackson. We affirm.

EXHIBIT A

1-05-3812

In the early morning hours of June 9, 2002, Nicole Lazarus was killed when her red car collided with a van driven by Richard Finley near the intersection of 67th Street and Kimbark Avenue in Chicago. The evidence at trial showed that Finley was speeding eastbound on 67th Street in his blue Chrysler van, attempting to evade defendant, who was chasing him in a green four-door Dodge Intrepid. As the two vehicles approached Lazarus, who was driving westbound, defendant overcame Finley, swerved in front of him, and forced him to the left and directly into Lazarus' path. The van struck Larazus' car head-on causing the death of Lazarus and severe injuries to the van's occupants. After the collision, Finley's passengers, Samantha Eggleston and her sister Shaneka, remained trapped in the burning van. Defendant stopped her car, exited, and yelled at one of them, "I hope you die. This is what you get for f\*\*king my man." Defendant then drove away.

Richard Finley testified that he and defendant dated one another intermittently and had a child together, but that they had been arguing at the time of the accident. On the morning in question, defendant was driving a blue Chrysler minivan on the south side of Chicago with Samantha and Shaneka Eggleston inside, when defendant started chasing him and sounding her horn. Finley claimed that defendant drove her car into the van prior to the crash, and that he woke up only after the collision had occurred and walked away from the scene in a daze. He admitted pleading

- 2 -

1-05-3812

guilty to leaving the scene of an accident in connection with the incident.

Samantha Eggleston testified that she and her sister Shaneka were in Finley's van at the time of the accident. She claimed that earlier, they were driving on 58th Street when defendant started to chase them in her green Dodge Intrepid. She bumped the van on both sides with her car, yelling, "[B]itch pull over. Let them bitches out my car. Pull over." When she bumped the driver's side of the van, the vehicle struck a parked red truck, causing its side mirror to detatch. The red truck soon started to chase them as well. Samantha did not remember the accident itself and woke up in the hospital. Samantha admitted that Finley, her sister, and she had been drinking before the incident and that Finley drove 70 miles per hour and disregarded red lights in order to evade defendant.

Shaneka Eggleston, Samantha's sister, corroborated Samantha's testimony. Shaneka testified that she was in the van with Finley and Samantha prior to the accident and saw defendant, whom she knew from the neighborhood, in her green Intrepid. Finley said, "Oh, sh*t, that's my baby's momma," and gained speed as defendant gave chase. Defendant drove directly behind them yelling for Finley to pull over and to "put them bitches out my car." After defendant bumped the van on the passenger's side, Shaneka got on the floor of the van to protect herself.

- 3 -

1-05-3812

Defendant then hit the van on the driver's side and forced the van into a parked red van, which soon thereafter began chasing them as well. Shaneka next remembered being pulled out of the van.

Shaneka was treated at the hospital and discharged. While in a waiting room at the hospital, however, she received a phone call from defendant, who asked how she and her sister were doing. Shaneka told her that her leg was broken and that her sister was in a coma. After providing this news, she heard defendant over the phone yell to a companion, "Oh sh*t, her sister in a coma. What am I going to do? I can't go to jail for murder. I have a daughter that's 3 years old." Defendant then instructed Shaneka to tell the police that defendant did not cause the accident, but rather some men who where chasing them. Defendant also said she was going to report her car and the van stolen. Before hanging up, Shaneka heard defendant say, "Richard you going down for it. I am not going down for it."

Travis Flowers testified that he and a friend were walking to a restaurant on the morning in question when he heard a van hit his sport utility vehicle parked on Cottage Grove Avenue. He turned, saw the van speeding down the street with a green Dodge Intrepid, and began chasing the van. As he pursued, Flowers saw the green car pull ahead of the van and make a "sharp left to push the van into oncoming traffic." The van hit a car,

- 4 -

1-05-3812

propelling both vehicles into a tree. He stopped and helped extract a woman from under the burning van. As he did so, he heard someone yelling "Bitch. Mother f\*\*ker, [t]hat what you deserve. That's what you get, bitch. Whore." Flowers identified defendant as the woman trapped under the van.[1] Flowers admitted that he had previously been convicted of unlawful use of a weapon and murder.

Bridgette Whitfield testified that she was driving westbound on 67th Street behind Lazarus' red car at the time of the accident, when she saw a van and car approaching from the west at a high rate of speed. The car was behind the van at first, but then pulled ahead and veered in front of it. The van then veered into oncoming traffic and struck the red car in front of her. Whitfield immediately stopped and saw a lady get "out of the green car that had veered in front of the van," approach a passenger of the van who was stuck inside and yell "I hope you die. This is what you get for f\*\*king my man." Whitfield identified defendant as the driver of the green car at a police lineup and during trial. Whitfield saw defendant's driver's side front fender contact the van.

Shanna Jackson was parking her car at the intersection of Minerva Avenue and 67th Street at the time of the incident and

---

[1] Flowers was the only trial witness to identify defendant as one of the individuals trapped under the van.

1-05-3812

saw a dark-colored Intrepid chasing a minivan down 67th Street at
a high rate of speed. She saw the Intrepid bump the van on the
passenger side, which caused the van to spin out of control and
land on top of a red car driving westbound. When she approached
the accident site on foot, Jackson saw a girl pinned under the
wreckage. Defendant exited the Intrepid with her baby and began
yelling at the injured girl, "That's what you bitches get. I
told y'all about f**kin' with my man." A man, dazed and injured,
exited the van and got in the passenger side of the Intrepid,
which defendant then drove away. Jackson identified defendant
and the green Intrepid she was driving that night.

Derrick Banks testified that he was sitting outside his home
on 67th Street when he saw a van and a car speeding side-by-side
eastbound. He then heard a crash and ran towards the sound.
When he arrived at the accident scene he saw that the van had
crashed and noticed a third, red vehicle, but did not see the car
that had been chasing the van. Banks stated that the van was
engulfed in flames and the red car was mangled. He saw a woman
trapped under the van and lifted the van off of her with the
assistance of other people at the scene. They then pulled a
female out of the back of the van. The bystanders also removed
Lazarus from the red car. Banks identified a photograph of
defendant's green car as the vehicle that he saw chasing the van.

1-05-3812

Jennifer Price had just retired to bed in her home on 66th Street and Kimbark Avenue, when she heard the accident. She called 911 and looked outside where she saw an Intrepid, a van on fire, and a red vehicle next to a tree. She also heard a female say, "Bitch, that's right. I hope you die." Price identified defendant's Dodge Intrepid as one of the vehicles at the scene.

Defendant began her case-in-chief by offering stipulations that various police reports indicated that: 1) on May 16, 2002, defendant reported her 1994 Chrysler van stolen; 2) on June 4, 2002, Chicago police found the van illegally parked and arrested the occupants, who were unconnected with this matter; 3) Whitfield and Samantha Eggleston did not tell police that they saw damage to the Dodge as a result of the collision; 4) Shaneka Eggleston did not tell police that she had been drinking with Finley prior to the accident or that defendant called her while she was at the hospital; 5) Banks told police that he saw the van spin out of control and flip over onto a red car; and 6) Flowers told police that he lost sight of the van and Intrepid during the course of the chase and only came upon the accident after it had occurred.

David Jackson, a private investigator, testified that he took photographs of the Dodge Intrepid which showed damage to the front quarter panel of the passenger side of the car.

1-05-3812

Defendant's step-father, Joe David Washington, testified that the van driven by Finley was parked in his garage prior to the accident with its brakes and transmission in disrepair. He further claimed that defendant told him that she followed Finley after he struck her car with the van and that she was not involved in the accident, but rather came upon the scene after it occurred.

After the court found defendant guilty of first degree murder, two counts of aggravated battery, and failure to report an accident involving death or personal injuries, defendant filed a motion for substitution of attorneys, which the court granted. Her new attorney filed a motion for new trial, alleging that trial counsel had been ineffective for not utilizing readily available impeaching evidence and for failing to conduct an adequate investigation prior to trial. Specifically, defendant first contended that trial counsel was ineffective for not impeaching Shanna Jackson with her statement to the police that she saw the van chasing a red car eastbound before the crash and that she could not identify any of the drivers of the vehicles involved. Second, trial counsel was ineffective for failing to interview Vernon Ward, even though the police report indicated that Ward saw Lazarus' red car, not a green one, chasing the van prior to the accident. Third, if trial counsel interviewed Ward, he would have discovered two additional witnesses, Marquis Ward

- 8 -

1-05-3812

and Ophiel Watkins, whose observations conflicted with the
State's theory that Lazarus was traveling westbound at the time
of the accident.  Fourth, her counsel was ineffective for failing
to introduce evidence that Finley independently told Felicia
Williams and defendant's mother, Debra Porter, that he alone
caused the crash.

At the hearing on the motion, the parties stipulated that
Officer F. Jordan received a statement from Shanna Jackson in
which she indicated the van was chasing the red car prior to the
accident and that she could not identify the "violators."

Vernon Ward testified that he and his brother, Marquis Ward,
were at a gas station at the intersection of 67th Street and
Eberhart Avenue when he saw what he believed to be Lazarus' car
speeding eastbound on 67th Street with a van.  After the brothers
left the station, they followed the vehicles eastbound until they
saw smoke.  At the accident scene, Vernon saw the wreckage of the
van and Lazarus' car.  He then drove to Lazarus' home and brought
her mother to the scene.  Vernon did not see the accident occur.

Vernon's brother, Marquis testified that he was at a gas
station when he saw a car "which looked exactly like" Lazarus'
car speed past with a van directly behind it.  He admitted,
however, that he could not identify the drivers of the vehicles
because they passed so quickly.  The brothers drove eastbound
until they came upon the scene of the accident.  Marquis claimed

1-05-3812

that they arrived no later than three minutes after the vehicles drove past the gas station. Marquis did not see the accident occur.

Ophiel Watkins testified that he was walking westbound on 67th Street, west of the accident site, for 10 to 15 minutes prior to the accident and saw no cars traveling in either direction. He heard the accident occur to the west and ran towards it. When he arrived, he helped extract Lazarus from her car and saw Vernon and Marquis Ward. Watkins did not see the accident occur.

Both defendant's step-father, Joe David Washington, and mother, Debra Porter, testified that they hired trial counsel, Anthony Schumann, to defend defendant and continuously monitored the progress of the case. They claimed that Schumann never asked them to help locate witnesses. Washington further testified that his wife received a phone call from a female who claimed that Finley had told her that defendant did not cause the accident. Porter also claimed that Finley called her and told her directly that defendant "didn't do this" and "didn't bump the car."

Defendant's trial attorney, Anthony Schumann, testified that he hired private detectives to investigate and interview possible witnesses and believed at the time of trial that Vernon and Marquis Ward had not seen the accident. Schumann denied ever receiving the name of Ophiel Watkins as a possible witness or

1-05-3812

information that Finley admitted to others that the accident was his fault.

On cross-examination, Schumann acknowledged that prior to trial, he received a police report indicating that Shanna Jackson told police that she saw a van chasing a red car prior to the accident and that she could not identify the drivers of the vehicles and another report indicating Vernon Ward observed Lazarus' car driving eastbound with the van prior to the accident. Schumann stated that he did not contact Vernon because he did not know his whereabouts, but also claimed on redirect that he had concluded that neither Vernon nor Marquis Ward witnessed the accident after reviewing Vernon's statement to police.

The court determined that defendant's trial counsel was not ineffective and denied defendant's motion for a new trial. In doing so, it noted the Ward brothers and Watkins did not witness the accident and therefore their testimony did not contradict the testimony of the witnesses at trial who did observe the accident. The court further found unpersuasive the Ward brothers' claims that they saw Lazarus' car drive by the gas station and noted that they observed the chase approximately 14 blocks away from the accident site. The court also found the testimony of defendant's parents as biased and inadmissible and Shanna Jackson's prior statement to the police not impeaching. The

1-05-3812

court concluded that defendant was not prejudiced by defense counsel's failure to present the proffered witnesses because the testimony of those individuals would not have affected its determination of guilt in any way.

The court then imposed a 30-year prison term for murder. The court also imposed two five-year terms for aggravated battery and a three-year term for failure to report an accident involving death or personal injuries, to be served concurrently with each other and consecutive to the 30-year term for murder.

In this appeal, defendant contests the denial of her motion for new trial. She specifically claims that her trial counsel was incompetent for failing to interview the Ward brothers and Watkins, even though the three men would have been easily discoverable had he looked, and for not seeking the admission of Shanna Jackson's statement to police as both substantive and impeaching evidence.

To prevail on a claim of ineffective assistance of counsel, defendant must establish that his attorney's representation fell below an objective standard of reasonableness, and that but for the attorney's errors, the result of the proceedings would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). If defendant fails to satisfy either prong, his claim of ineffective assistance of counsel will fail. <u>People v. Patterson</u>, 192 Ill.

1-05-3812

.2d 93, 107 (2000). To establish prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As to the first prong, we initially note that defense counsel was not unreasonable in failing to interview Vernon and Marquis Ward after reviewing Vernon's statement to police and determining that neither man actually saw the accident occur. Trial counsel owed defendant a duty merely to conduct a reasonable inquiry into their observations and his decision not to investigate further did not constitute ineffective assistance. People v. Pecoraro, 175 Ill. 2d 293, 324-25 (1997).

We agree with defendant, however, that trial counsel was unreasonable in failing to impeach Shanna Jackson with her prior inconsistent statement to police. At trial, Jackson stated that she saw defendant's green car force the van into Lazarus' red car as it approached from the opposite direction. Immediately after the accident, by contrast, she told police that the van was chasing a red car and that the accident occurred when the van hit the back of the red car. Defense counsel was unreasonable in failing to confront Jackson with this prior inconsistent statement.

- 13 -

1-05-3812

Nevertheless, even if defense counsel was ineffective in all instances defendant contends, we do not find a reasonable probability that, but for those purported errors, the result of trial would have been different. Indeed, the circuit court, in denying the motion for new trial, held that the testimony of the Ward brothers and Watkins would not have affected its determination of guilt in any way.

Although that proffered testimony, which suggested that Lazarus was traveling eastbound at the time of the accident, would have been relevant to the court's determination as to how the accident occurred, we note that the Ward brothers made their observations minutes before the accident and approximately 14 blocks away from the scene. Similarly, Watkins was located east of the accident site and did not see the collision occur. As such, the testimony of these witnesses was considerably less probative as to the cause of the accident than the testimony of Whitfield, Jackson, and Flowers, who all saw defendant force Finley's van into Lazarus' car.

We also conclude that defendant was not prejudiced by her trial counsel's failure to offer Shanna Jackson's prior statement to police, in which she claimed that the accident occurred when a van ran into the back of a red car, as impeaching and substantive evidence. Whitfield and Flowers gave unwavering testimony that defendant's green Dodge Intrepid forced Finley's van into the red

1-05-3812

car driven by Lazarus. The Eggleston sisters, Finley, and Flowers all testified that defendant was chasing the van in her green Dodge Intrepid and bumping it with her car, and consistent with these accounts, Banks testified that defendant's green car was chasing Finley's van immediately prior to the accident. Additionally, Shaneka heard defendant say, "Oh shit, her sister in a coma. What am I going to do? I can't go to jail for murder. I have a daughter that's 3 years old," and "Richard you going down for it. I am not going down for it."

In reaching our conclusion, we reject defendant's reliance on the Seventh Circuit's decision in Stanley v. Bartley, 465 F.3d 810 (7th Cir. 2006). In Stanley, the court found the habeas corpus petitioner's trial counsel to be ineffective for failing to interview a potential witness whose testimony could have impeached that of a key prosecution witness and implicated him, not defendant, as the murderer. Stanley, 465 F.3d at 812, 814. Prior to trial, the defense attorney received a police report indicating that the individual saw the State's witness engage in a physical altercation with the victim prior to the murder and heard him say, "I'll catch your ass later on." Stanley, 465 F.3d at 812. The court also found defense counsel unreasonable for not impeaching the State's other key witness with her prior inconsistent statements to police. Stanley, 465 F.3d at 812, 814. These two errors, the court held, cost defendant a

- 15 -

1-05-3812

reasonable chance of acquittal. <u>Stanley</u>, 465 F.3d at 814. In this case, by contrast, we find no reasonable probability that, but for the purported errors by defense counsel, the result of the proceeding would have been different.

Accordingly, defendant's motion for new trial was properly denied and the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'MARA FROSSARD, J., with FITZGERALD SMITH, P.J., and GALLAGHER, J., concurring.